(No. 27912.—

THE PEOPLE *ex rel.* Victor L. Schlaeger, County Collector, Appellee, *vs.* A. F. W. SIEBEL, Trustee, Appellant.

*Opinion filed Sept. 19, 1944—Rehearing denied Nov. 16, 1944.*

ADELBERT BROWN, of Chicago, for appellant.

THOMAS J. COURTNEY, State's Attorney, BARNET HODES, Corporation Counsel, WILLIAM J. TUOHY, RICHARD S. FOLSOM, KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS,

and ERNST BUEHLER, (JOSEPH B. FLEMING, JOSEPH H. PLECK, JOSEPH F. GROSSMAN, OTHO S. FASIG, EMMETT HARRINGTON, J. HERZL SEGAL, LAWRENCE J. FENLON, EDWARD C. CALDWELL, and RICHARD R. YOUNG, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Appellant paid a part of his 1940 real estate taxes under protest and accompanied the payment with written notice as required by section 194 of the Revenue Act. (Ill. Rev. Stat. 1943, chap. 120, par. 675.) When the county collector applied to the county court for judgment and order of sale for delinquent taxes, appellant supplemented his protest with written objections in which he alleged the illegality of certain levies and asked for a repayment of the amount paid under protest. The objections were that a part of the levy for the board of education of Chicago, a part of the city's library tax and a part of the levy of the sanitary district were excessive. The county court sustained the objection to a part of the school levy but overruled it as to the remainder. The objections to the library tax and the sanitary district levy were overruled. Appellant appealed from all orders adverse to his claims. No cross-appeal has been perfected from the order which held a part of the school levy excessive.

The objection to the school levy relates to appropriations made by the board of education in its annual budget of 1940 for the bond redemption and interest fund. The appropriations for that year covered several series of bonds, all of which were issued prior to 1940, but only a part is involved in this case. That part of the appropriation objected to was to meet installments and interest on bonds which some years prior had been issued to pay

tax anticipation warrants and to refund bonds issued for the same purpose. The appropriations objected to were:

Educational fund bonds, 2d series, principal and interest . . . . . . . . . . . . . . . . $381,644
1/11 of the refunding bonds of 1935, 1st series, principal and interest . . . . . . . . 163,409
Refunding bonds of 1935, 2d series, principal and interest . . . . . . . . . . . . . . . . 204,125
Total . . . . . . . . . . . . . . . . . . . . . . . $749,178.

Appellant contends that such an appropriation produces an illegal levy, and appellant advances a theory which, if adopted, would reflect the illegal appropriation in the 1940 levy.

It will be noted that these bonds are of the same series for which appropriations were made by the board of education in the annual budget for 1939 and to which objections were filed and considered on appeal in *People ex rel. Toman* v. *Granada Apartment Hotel Corp.* 381 Ill. 41. In that case it was held that bonds issued to pay tax anticipation warrants were void and, therefore, an appropriation for such purpose was illegal. It was held in that case that the levy of 1939 was excessive in the sum of $833,744.92.

The budget of 1940 was adopted in January of that year which preceded the filing of the opinion in the *Granada case.* The hearing on appellant's objections to the 1940 levy was subsequent to the filing of the opinion in the *Granada case,* and the county court applied the holding in that case and held the bonds above described were void and that they did not create a liability for which the district was liable. There is no controversy on this feature of the court's ruling. The briefs filed on behalf of the board of education concede that under the *Granada* and other cases, it is settled that tax anticipation warrants

are payable solely from the taxes against which they are drawn and that bonds which have been sold, and the proceeds of which were applied to the payment of such warrants, are void and levies can not be made to pay such bonds.

The first question presented on this appeal is as to how the illegal appropriation in the 1940 budget, $749,178, may be accounted for. Appellant's position is that since the budget must balance, an illegal appropriation is necessarily matched against an illegal levy of the same amount. Appellee contends that an illegal appropriation is not objectionable unless it produces an illegal levy and argues that the facts presented do not show the illegal appropriation for the bonds in question was followed by an illegal levy. It is conceded that $194,934 of said illegal appropriation out of a total of $749,178 is not balanced, and that the 1940 levy was excessive as to said amount.

The theory advanced by appellee to furnish a basis for such conclusion comes from an involved statement of figures, the greater part of which is introduced into the record through the computations and deductions of the auditor of the board. Appellant contends that such theory does not find support in the law and that such evidence was not admissible. Appellant's argument leads to the conclusion, if adopted, that the figures and computations of the auditor in effect change the budget figures, being in reality the judgment of the auditor, rather than that of the board of education.

The 1940 budget contained a statement of estimated resources for appropriation for the bond redemption and interest fund. This was composed of two items, namely:

(a) Estimated current assets available
      for appropriation . . . . . . . . . . . $12,992,990.43
(b) Estimated current revenue. . . . . .    3,072,221.00

      Total . . . . . . . . . . . . . . . . . . . . $16,065,211.43

On the contra side there appeared:

(a) Unpaid liabilities of prior years.. $12,992,990.43
(b) Other expenditures and charges to
    be made or incurred during 1940   3,072,221.00

    Total . . . . . . . . . . . . . . . . . . . $16,065,211.43

The balance sheet of the bond redemption and interest fund itemized the estimated current assets of $12,992,-990.43, and listed them under three heads, namely:

(a) Cash, sinking fund balance. . . . . . $ 6,606,057.72
(b) Taxes receivable from taxes levied
    in prior years, 1930-1939. . . . .  6,259,623.33
(c) Receivable on leases of school
    property . . . . . . . . . . . . . . . . . . .  127,309.38

    Total . . . . . . . . . . . . . . . . . . . . $12,992,990.43

This same balance sheet further itemizes the amount receivable from each of the levies, 1930-1939, inclusive, and sets forth the amount which the board of education estimated would be available in 1940 from each of the levies of said years. These estimates by years ranged from $78,809.75 for the levy of 1930, to $2,760,000 for the levy of 1939. The crucial question on this objection centers around the latter estimate.

The levy for 1939 bond redemption and interest fund was $3,066,666, including loss and cost. In the 1940 budget it was estimated there would be available in the current year from the 1939 levy the sum of $2,760,000. The figures quoted above and conclusions drawn are ascertainable from the facts stated in the budget.

It appears in the auditor's testimony that in 1941 the county court sustained objections to the 1939 levy for bond redemption and interest fund in the sum of $135,505.18. The holding in the *Granada case* added $833,744.92 more to the loss in the 1939 levy. The auditor testified that he

prepared the budgets for 1939 and 1940 and that in making the estimate of taxes of the 1939 levy that would be available in 1940 no allowance was made for the foregoing deductions on a certain item of loss and cost of collection.

The auditor applied the foregoing figures, as follows:

| | |
|---|---|
| The amount lost by ruling of the county court on objections................. | $135,505.18 |
| Excessive levy determined in the *Granada* case ........................... | 833,744.92 |
| Total ........................... | $969,250.10 |

The auditor further testified that past experience showed that when objections were sustained to a particular item in a levy, the loss by refund and abatement was 75 per cent of the levy, making the loss from the county court ruling and the *Granada* decision a total of $726,938. The auditor further stated that experience also showed there would be a loss of $233,972 for loss and cost of collection of all legal levies. This added to the item of $726,938 makes a total deduction, according to his calculations, of $960,910. The auditor deducts said sum from the total levy for the year of $3,066,666, thereby leaving $2,105,756. He stated that this latter figure represents the net taxes receivable from the 1939 levy for bond redemption and interest fund. His evidence is that if the available taxes from the 1939 levy were carried into the 1940 budget estimate at $2,105,756, in lieu of the original estimate of $2,760,000, there would be a difference of $654,244 between the estimated returns for the 1939 levy as fixed in the budget by the board of education and as shown by his computations. It is argued that if this amount be reflected in the 1940 budget estimate of the 1939 levy, the reduction in the available and appropriable assets would offset the greater part of the appropriation for illegal bonds. Appellee concedes that any difference

between the illegal appropriation and the loss sustained in the auditor's estimate of the amount available from the 1939 levy would constitute an excessive levy, which the county court fixed at $194,934.

In determining the admissibility of the evidence of the auditor on these matters, it is necessary to look to the requirements of the statute which directs the board of education to prepare an annual budget. Section 135½ of the School Law (Ill. Rev. Stat. 1943, chap. 122, par. 158a,) prescribes the requirements of such a budget and among other things directs that the board shall set forth "estimates, by classes, of all current assets and liabilities of each fund of such board, * * * and the amounts of such assets available for appropriation in such year, either for expenditures or charges to be made or incurred during such year or for liabilities unpaid at the beginning thereof. Estimates of taxes to be received from the levies of prior years shall be net, after deducting amounts estimated to be sufficient to cover the loss and cost of collecting such taxes and also deferred collections thereof and abatements in the amount of such taxes extended or to be extended upon the collector's books."

It will be observed that the statute makes no distinction in the requirements between a fund maintained for bond issues and one which accounts for current expenses. A bond redemption and interest fund has certain assets which have to be included in the budget, one of which is the taxes to be collected from the levies made at the time the bonds were issued. The constitution (section 12, article IX,) demands that every municipality, including school districts, shall at the time of the issuance of bonds make provision for their payment by the levy of an annual tax. In making the annual budget, the board is required to estimate the amount of such levy or levies that will be available in the current year. It is well known that the amount of tax that will be collected and available from a

bond tax levy in a particular year is difficult of ascertainment in advance of the collection. The statute makes provision for such uncertainty and authorizes a board to give the asset as an estimate net. In arriving at such estimate, the board is required to make allowance for certain deductions from the amount of the original levy. It is readily conceivable that there could well be a difference as to the amount to be allowed as a deduction as between the levies of various series of bonds as well as between levies of various years. The statute leaves it to the board of education to note these and other differences and make allowances as it deems advisable and, except for an arbitrary abuse of such discretion, the amount so deducted by the board will not be reviewed by the courts. Within the realm of an exercise of a sound discretion, the judgment of the board of education will be considered final. In this case, the board concluded that the 1939 levy of $3,066,666 should be reduced to $2,760,000 and this latter amount was fixed as its estimate in the budget. There are some of the calculations of the auditor that are based on facts which have developed since the budget was adopted and others which he included that have been brought into the computation by his own deductions and experience. Clearly his judgment could not be accepted in lieu of the judgment and discretion to be exercised by the board of education.

The purpose of the requirements of the budget law is to furnish the taxpayer information as to the amount which is available and for which no current levy will be needed, as well as the amounts to be levied and expended. If an estimate, like the one of the 1939 levy, is subject to fluctuation by the happening of subsequent events, there would be little stability in a budget and the purpose of the act would be defeated.

In coming to this conclusion we recognize the holdings of this court that in cases of this character, verbal testimony may be admitted to explain or clarify the figures,

statements and conclusions of a budget or appropriation ordinance, but the testimony of the auditor and the purpose for which it was offered were not of that character.

There are other well-established principles of law pertaining to the adoption of a budget or appropriation ordinance which are closely related to the principle involved. They are that taxing bodies are created for the purpose of levying taxes and administering the business affairs of the municipality for which they act. They are vested with the power to ascertain and fix the amounts necessary to be raised by general taxation to meet its corporate needs. (*People ex rel. Toman* v. *Central Plaza Hotel Corp.* 375 Ill. 114.) The power to levy a tax is not a judicial function. (*School Directors* v. *School Directors,* 232 Ill. 322.) The validity of a levy is to be determined as of the time the levy was made. Facts arising out of subsequent events can not be used to defeat the intent and purpose of the taxing body that made the levy. *People ex rel. Salm* v. *Scott,* 300 Ill. 290.

In *People ex rel. Nash* v. *Maxwell & Co.* 359 Ill. 570, and *People ex rel. Gill* v. *Diversey Hotel Corp.* 364 Ill. 298, this court considered questions pertaining to estimates of taxes of prior years. In the *Maxwell case* the objection was as to taxes levied for the corporate purpose fund and the board of education free-text-book fund of the city of Chicago. The statutory requirements in reference to appropriation ordinances under consideration in that case may, for purposes here, be considered as of the same character as the requirements of the school budget law. In that case it was contended the levy was excessive. It was argued that in ascertaining the amount of surplus available for appropriation in 1931 the city council had failed to include an item of more than $28,000,000, which represented uncollected taxes levied for the years 1901-1927, inclusive. This amount was net after allowing 10 per cent for loss and cost of collection. Such sum appeared

in the comptroller's report as a contingent asset. It was held in that case that the city council was not required to include such items in its appropriation ordinances as if it were a cash asset even though it appeared upon the tax books as an uncollected tax. In this case we are not concerned with the availability of uncollected taxes of prior years, but are asked to reduce the "estimate net" of the taxes available for a prior year as fixed by the board of education and substitute another estimate based upon losses which became fixed and determined long after the board adopted the budget. The objection to the city library tax in the *Diversey Hotel case* was of the same character. See, also, objection No. 11 (page 156) in *People ex rel. Toman* v. *Mercil & Sons Plating Co.* 378 Ill. 142.

Appellee's further contention is that the appropriation for illegal bonds as included in the bond redemption and interest fund was not carried into the levy of 1940. It is stated that the objection goes to the levy of prior years, that is, to levies that were made when the bonds were authorized. It is not necessary to discuss in detail the differences between a tax levy made by a board of education to comply with the constitutional mandate when it issues bonds and a levy made by it for the current year. That a bond levy adopted to meet the constitutional mandate possesses certain characteristics peculiar to such levies is well settled by the decisions of this court.

In *People ex rel. Stuckart v. Day,* 277 Ill. 543, in referring to said constitutional provision, section 12 of article IX, it was said: "That provision is self-executing, and imposes a legal obligation upon the municipality to provide, before or at the time the bonds are issued, for their payment by a direct annual tax. (*Pettibone* v. *West Chicago Park Comrs.* 215 Ill. 304.) Where provision is made for the levy of an annual tax sufficient to produce a specific, fixed sum it amounts to an appropriation of such sum annually, and the provision of the constitution controls

any statutory direction, so that the municipality may levy and collect the tax although it may not be included in the appropriation bill made during the first quarter of the fiscal year. That there may be standing appropriations was recognized in *People* v. *Lippincott, 72* Ill. 578, and the constitutional provision for the levy of fixed amounts annually is of that nature. In such a case there is a lawful appropriation for each year during the existence of the debt and the duty to levy the tax is enforcible by *mandamus.*"

In *People ex rel. Kiggins* v. *Wabash Railway Co.* 281 Ill. 382, it was held that where a city in making provision for the issuance of bonds adopts an ordinance which authorizes the bonds and also provides for the levy of a direct annual tax to pay the interest and principal of the bonded indebtedness, such tax may be extended without including the amount of the bonded indebtedness each year in the annual appropriation and tax levy ordinance. See, also, *People ex rel. Pegram* v. *Stoll,* 322 Ill. 286, and *People ex rel. Hicks* v. *New York, Chicago and St. Louis Railroad Co.* 323 Ill. 493.

Although the law under which the budget of 1940 was made became effective after the foregoing cases were decided, there is nothing in it that in any way changes the effect of such holdings. The statute merely adds the obligation to the board to budget the bond redemption and interest fund. In *People ex rel. Gill* v. *Schiek,* 368 Ill. 353, the question was as to whether city tax anticipation warrants could be appropriated for and paid out of a tax levy other than the one which they were issued against. They had been included in the appropriation ordinance of a subsequent year. It was recognized that the statute regulating the annual appropriation ordinance for cities required the budgeting of such warrants but that they were payable solely from the tax which they were issued against. It was found in that case that they had been appropriated

for and carried into the current levy as a corporate purpose. The objection was sustained. In this case the board budgeted such fund but in its statement of estimated resources and appropriations by funds, it carried the estimated current assets and estimated current revenue of the fund into the same total to offset the liabilities of prior years and current expenditures. Provision was made in such appropriation to pay the illegal bonds and included in the levy was an amount which equaled the illegal appropriation. We do not intend to hold that the levy for the bonds made at time of issuance was supplanted by the levy of 1940 for current expenses of the fund, but that the levy for such bonds is carried into the annual budget of 1940 as a part of the current levy so that the objection will have to be sustained. As was said in the *Granada case,* a legal appropriation is lacking for taxes levied amounting to $749,178. The levy was excessive in such amount.

Appellant contends the levy of the city of Chicago for library fund (maintenance and operation) was excessive in the amount of $574,936. The appropriation for said fund consisted of two items, namely:

(a) Maintenance and operation........ $2,400,000.00
(b) To discharge liabilities of the fund
    outstanding as of January 1, 1940    74,322.32
  Total .................... $2,474,322.32

The sources and amounts of revenue available during the year to meet such appropriations were set forth as follows:

Cash on hand, January 1, 1940........ $   81,231.78
Net taxes receivable (from levies of prior
  years) .......................    960,027.30
Current levy of 1940................  2,000,000.00
Miscellaneous receipts ..............    8,000.00
   Total ....................... $3,049,259.08

It will be observed that the available resources are $574,936 more than the total appropriations. Appellant contends the current levy of $2,000,000 is therefore excessive in the amount of $574,936.

The city offered the evidence of its assistant deputy comptroller to explain certain items. He testified that the sum of $960,027.30 carried in the resources was an estimate of "net taxes receivable" from levies of 1939 and prior years. It was the amount fixed by the city council that would be available net in 1940 from the levies of prior years, but the witness stated "the amount ($960,027.30) does not represent and should not be taken as an estimate of the moneys that were to be actually received in cash by the Chicago Public Library during the year 1940, as a substantial part of it represents taxes receivable which will not be collected during the year 1940 and some of which may never be collected." He further testified "the records in the office of the city comptroller show that of the amount of $960,027.30 net taxes receivable of January 1, 1940, for the public library fund, only $319,655.33 was actually received in cash during the year 1940."

Appellee argues that such evidence shows that of the $960,027.30 fixed as the estimate of the city council there was "only $319,655.33 actually received in cash during the year 1940. That means that actually $640,371.97 was not collected while the city council had estimated that only $574,936 would be uncollected." In our analysis of the appropriation ordinance we do not find that the city council ever estimated that there would be any part of the $960,027.30 as set up in the appropriation ordinance that would not be available for expenditure in 1940.

Section 2a of Article VII of the Cities and Villages Act (Ill. Rev. Stat. 1939, chap. 24, par. 102,) requires that the annual appropriation ordinance shall set forth estimates by classes of all current assets and liabilities of each fund as of the beginning of the year. It provides

that the estimate of taxes to be received from the levies of prior years shall be net after deducting: (a) loss and cost, (b) taxes that are not collectible, (c) forfeited real estate taxes, (d) anticipation warrants, (e) interest accrued thereon, and (f) future interest on such warrants. The uncollected part of the levies of prior years as referred to by the witness as being uncollected comes within the deductions authorized by statute. If the city council in fixing its estimate for the appropriation ordinance made the deductions as required by statute, the items which the deputy comptroller refers to in his testimony should have been included in the council's deductions so as to arrive at the "net receivable." In this objection, as in the board of education levy, *supra,* we have the question presented as to the extent and effect of the city council's estimate of the amount of taxes to be received from levies of prior years. What was said in connection with the prior objection is controlling here. Appellant's objection to the library tax should have been sustained.

Appellee places strong emphasis upon what was said in disposing of objection No. 11 (page 156) in *People* v. *Mercil & Sons Co.* 378 Ill. 142. The question disposed of on that objection was as to the value a taxing body should give to uncollected taxes of levies of prior years in fixing their estimates. It was demonstrated by the illustration that if $1000 of uncollected taxes was subject to deductions of $800, the difference of $200 was the estimate to carry into the appropriation ordinance as a resource. In deciding that objection, we followed *People* v. *Maxwell Co.* 359 Ill. 570, and *People* v. *Diversey Hotel Corp.* 364 Ill. 298, both of which were limited to such question. Our attention is called to the similarity between the appropriation for the library fund in the 1938 levy considered in the *Mercil case* and the appropriation for the same fund in this case. The question to be determined in this case was not considered in the *Mercil case.*

In the 1940 annual budget of the Sanitary District of Chicago there appeared an item showing that the corporate fund had advanced or loaned to the bond and interest fund the sum of $1,383,885. Appellant contends that, in preparing the estimate of resources of the corporate fund, said amount due from the bond and interest fund should have been included as an available asset of the corporate fund. Evidence was introduced to show that said amount was not available for appropriation in 1940 and that the bond and interest fund did not repay the corporate fund during that year. Appellant concedes appellee's contention that the amount due from the bond and interest fund to the corporate fund was shown by the evidence not to be available for appropriation in 1940.

What has been said in disposing of the objections to the board of education levy and the levy of the city of Chicago demonstrates the effect to be given to the conclusions of a taxing body when engaged in determining the amount of taxes to be levied, the amounts that are available from levies of prior years, and other sources. No reason appears why, on this objection, we should depart from the principle that the court will adopt the conclusion of the taxing body that a certain item is not available for appropriation in a particular year unless there has been a showing of an arbitrary abuse of discretion. There is no such showing. The objection was properly overruled.

For the reasons assigned, the judgment order is reversed and the cause remanded to the county court, with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*